Thank you, Your Honor. May it please the Court, we're going to deal with a lease signed by two sophisticated parties which contained a provision allowing early termination upon the occurrence of various conditions. The uncontradicted evidence before the district court was that NCO, the tenant, had sent a notice to terminate, that NCO had sent a first of two required payments in the correct amount which had never been questioned by the landlord, but that NCO sent a second payment and improperly deducted the amount of what was called a janitorial allowance which was not within the required definition of the word rent. The uncontradicted evidence indicates that NCO never paid the termination fee within the time required by the lease or for that matter at any time up to the expiration of the termination effective date. In its brief, NCO concedes and does not contend that the district court erred in concluding that the janitorial credit was not a proper, that it was an improper deduction from the second installment. They don't declare or contend otherwise. Nor do they contend that it was impossible for them to calculate the right amount of the rent that should have been paid. They clearly did not comply with the requirements of the early termination provision contained in the lease. They rely on the restatement and the Breckenheimer case. Can I just ask you a question about this? Out of all the facts we're seeing, the timing of these two timely payments, the second payment is $1,000 because they did in fact miscalculate a little bit about how much they would owe for their share of operating expenses at the time of termination. I mean, you're saying that's not this case, which I understand, but under your theory, this is a condition. It requires exact matching. That wasn't an exact match, so there would still be no effective termination. Exactly. That's what the Elderkin case said. The Elderkin case involved a series of attempts by a purchaser who was an option holder to exercise the option, and five different times they tried to exercise it. But you can see then that that's why Maryland has this preference, if it's ambiguous, for construing things as more flexible covenants so that if someone makes a good faith, extremely insignificant error under conditions where it would be hard to get it exactly right, they're not penalized to the tune of four years of rent payment when you could just, you know, make it right by having them pay the extra $20. Maryland allows that if there is not a clear, unambiguous requirement. Because Maryland said, Maryland law has always said that the parties to a clear, unambiguous condition have to comply strictly with that condition, even if the lease didn't require it. But the lease here did require it. And that's what both the restatement, which NCO relies upon, and the Breckenheimer case, which NCO relies upon, specifically says. It says unless an agreement makes it clear that an event is required in addition to an obligor's performance, it's fair to construe it the other way. The problem is this lease makes it perfectly clear, patently clear that these are conditions, not simply covenants. Well, I would normally agree with you that when something says, you must give us a second payment, implicit in that is in the correct amount. But I do wonder whether under circumstance, in this particular narrow context, where it is so obvious that there might be questions about exactly how much the payment is for, you would expect it to actually hear, say, you must give us payment in the proper amount. We get that it would be hard to calculate that, but if you're off by $20, you lose. And the Maryland law is clear that some difficulty in complying with the condition doesn't vitiate it. That's not what I'm saying. I'm talking about the best way to read this language and whether it is 100% unambiguous that this payment has to be in the proper amount and why you wouldn't expect it to actually say the words in the proper amount. Because for this reason, Your Honor, the terms termination fee and termination notice are defined terms in this agreement. The agreement requires payment of the capital T, capital F termination fee. It is defined in the agreement specifically as the 10 months of rent, so that it doesn't matter that a minor change and minor discrepancy doesn't affect it. You have not complied with a defined term in the lease. Termination fee is capitalized, capital F. That makes a very substantial difference in this case because it is a defined term that must be strictly complied with. And that's why the $20, it doesn't matter. You have not matched specifically. The same reason why the Maryland Court of Appeals in the Eldrickon case said that by attempting to hold out a $15,000 charge for cleanup in an option agreement, that wasn't a proper matching of the terms. So the court doesn't look at specifically whether it's a little amount, a great amount, whatever it is. If it is a condition, it is a condition. Does it advance your point that they computed the amount under this clause the first time accurately and didn't even express confusion the second time? They just brought in another element. It wasn't an effort to satisfy the condition. They were able to satisfy the condition as defined here apparently in the first payment, weren't they? Absolutely, Your Honor. And, in fact, there was no allegation by them that they had any confusion about the amount of the second payment. They had taken the position in their petition, their original complaint, and throughout this case up until the judge's decision that they were entitled to take this janitorial allowance as a deduction. There was never a contention, oh, we didn't know what the correct amount was. They, in fact, computed the correct amount. But that's not, for your purposes, it doesn't, I mean, that's why I asked you my first question. That's not the, that is not the position you are advancing, though. The position you are advancing is it doesn't matter. It could have been a good-faith $20 error in trying to compute it, and this case comes out the same way. That's correct. My position is when fairly read in this lease, by defining the terms, termination fee and termination notice, they, as defined terms, had to be complied with. And the issue as to whether or not one, these are conditions or not, it is, to me, perfectly clear. You start off with the proposition that we have the language that strict compliance with all of the following requirements are required. Strict compliance, and it's a conditional right. That's, by definition, a condition. Then after they list the requirements, they have the if and only if language, which reinforces the position that these are conditions. The courts have always read if and only if to be conditional language. Third, we have at the end of it that the tenant shall not have the right to terminate the lease if it fails either to deliver the termination notice, the fine term, or pay the termination fee. And it's a timely delivery of the fee. And, again, it is a defined term. So before we list the conditions in the lease, after we list the conditions in the lease, and then again we call it a conditional, we list conditions. I don't know how a drafter of a lease could possibly have said it any other way. They could have said in the proper amount. That would be one way. Just to give heads up to the other parties signing it, this might be a difficult number to calculate because you're going to have to predict your share of certain expenses in some future time. Because of that, we want to make unambiguous, if you get it wrong, you forfeit everything. This has to be in the proper amount. That's what I would have done as a lawyer. Well, you could have done that, or you could have had a defined term, termination fee, and defined what that fee was required to be, which is the way they did it. Yes, you could have done it a number of different ways. And I think by having defined terms of termination fee, termination notice, you've accomplished that. I don't think there can be any doubt that when you read what is required, and there was, in fact, it's not as if this became unfair to the tenant. The tenant knew exactly what had to be paid. They simply made an improper deduction, which they don't claim even here was not improper. And so it's not a fairness issue in this case. Is there any way, tell me, if you would, is there a way to rule in your favor that leaves an exception for a case where there was a fairness issue? This is why I keep coming back. But you want a ruling that would also apply in a case that we could agree would raise certain fairness issues. We believe that Maryland law is clear that where you have conditions, it is not a question of fairness, equity, anything else. And that's what the restatement says, and that's what Breckenheimer says. Breckenheimer says that unless an agreement makes it clear that the event is required as a condition, then you interpret the contract otherwise. But if it is clear that the contract requires a condition, that's the end of the discussion. I get it. That's why I don't understand when you keep saying there was no unfairness here. That is not something that you. I don't either. All I'm suggesting is that there was no unfairness, but the fact of the matter is it doesn't matter. If it's a condition, it is a condition. Breckenheimer says it that way. The restatement says it that way. And the question is, is it clear and unambiguous? And, frankly, we suggest, and this Court will have to make their own determination, but we suggest it is clear and unambiguous, and I don't know how you could have written it another way. Do you think your conditional term is susceptible to substantial compliance? That is not a question of substantial compliance. This is a hypothetical. I'm asking would your condition be susceptible to a substantial compliance defense? So in the scrivener's area, I took the rent, I multiplied it by 10, but I was off by $2. That's my point, Your Honor. So it's not even susceptible to substantial compliance? No. It is a condition that was specifically set forth in the lease, and the condition had to be met. That's what the Court of Appeals has said for, frankly, 100 years, when you have the matching cases in the option holding. You either match the option requirements or you don't match the option requirements, and that's what the Court did in Eldrickon. Eldrickon looked at five different attempts to match the requirements and went through each one, and you might say, well, on the one hand, in Eldrickon, there was a deposit required, and instead of giving the deposit to the seller, they gave the deposit to a real estate broker. Well, isn't that substantial compliance? They gave the right amount, they gave it timely, but they gave it to the owner's real estate broker instead of the owner. But the Court said, no, that was not strict compliance. It didn't matter how insignificant it might be on an economic basis. Nothing mattered, but one thing, the option contract required it to be paid to the owner. Paying it to the owner's agent was not enough, and the same was true with the deduction for the cleanup. Yes, it was a relatively insignificant amount compared to the purchase price, but $15,000, basically the Court said that is not compliance with the option. They didn't go into the discussion, was it substantial, was it close? There was no discussion about it. The Court in Eldrickon basically simply said that the cleanup fee was, quote, a change in the purchase price, which, again, would be a material change. Once you change anything from the option, it's a material difference. And what bothered the district court, obviously, about this was that if you read the contract that way, it does seem to set up a scheme where it's always going to be possible to dispute the exact amount by at least a little bit, right? And so there's really no way to effectively terminate this because any number, it could be off by a few dollars. You are having to predict some future amount of money that you would owe when the termination becomes effective as your share. And so the district court, maybe I'm just giving you a chance to respond to the district court's argument, was this is really pretty unfair to read it that way because it's going to be the landlord who will always have the option of saying, you're off by a nickel, sorry. Well, you can always have a dispute about anything. I accept that. The fact of the matter is there was no dispute here. There was no evidence. Yeah, I'm going to ask you not to go back to the facts of this case where there was no dispute, there was no unfairness because the position you're asking us to adopt, it would apply in, let's call it the district court's hypothetical, where there's a dispute about five cents about whether the tenant actually properly calculated its future share of operating expenses and taxes. They got it off by a nickel. So the rule you want us to announce is too bad, you owe four years of rent. And I'm wondering if you have a response to that. The response is sometimes there are questions about those issues. Sometimes, and that's why people may request a payoff statement. When I have a loan with Bank of America, for example, and I want to pay it off, and I'm not quite sure how much it is, and I don't want them to foreclose on my property. So what do I do? I send a request for a payoff statement, and I get a payoff statement. But the fact of the matter is that those are methods by which the parties can reasonably sophisticated parties, such as we have here. We don't have, you know, a little old lady or a little old man who's trying to figure out the right amount of money. You have ultra-sophisticated parties who could have simply requested a payoff statement for the first day, and if they had not given them a payoff statement, then you would have had a defense on their part that I've interfered with your ability to pay it off. I've interfered with the ability to come up with the right number. But from an economic and a very economically practical way, they could have asked for a payoff statement. If one's given, all they have to do is pay it off anonymously. Thank you. Thank you. Good morning. May it please the Court. Kevin Dougherty on behalf of NCO Financial Systems, now known as EGS Financial Care. Obviously, between the appeal and the cross-appeal in this case, there are several issues to discuss today. I'm happy to start wherever your honors would like. But my plan is to address the issues that we've raised in response to Montgomery Park's appeal before turning to those raised in the cross-appeal. We've been discussing, the Court has been discussing with my colleague, Beckenheimers, in the interpretation of the contract. I actually think there's a shorter way to get to a fair result in this case, and it's the election of remedies doctrine that we've raised. I think that the threshold question for this Court really has to be why. Counsel, this is not an election of remedies. They took the judgment. Their judgment was rejected, and then they took the judgment the Court gave them. That's not an election of remedies. If they had an opportunity to elect the other course, they would have taken it. I don't even think this comes close, and I think you're wasting your time, valuable time here arguing it, unless my colleagues think. Well, respectfully, Your Honor, I disagree. I do think that this is, and I'll be very brief on this, but I do think that this is an election of remedies case. There were two possible outcomes under the terms of this lease. Perhaps Montgomery Park regrets its decision at this point, but it made its decision to take the balance of determination fee in full knowledge of the facts and the law, and it could have stuck by its original theory and appealed the judgment that it's doing now without asking for final judgment, and that final judgment foreclosed for the balance of determination fee terminates the party's ongoing relationship and eliminates its right to the continuing stream of right. That is a fair and a just result. So that effectuates the bargain negotiated by the parties. The arguments that you made below and make here on this document seem to show a situation where it would turn conditions in contracts upside down. I mean, the hornbook law that you get in law school is that if somebody says, I will sell you this property or you can exercise this option by delivering a purple cow, it's never a question of materiality. It's never a question of fairness. It's never a question of rationality. It's a question of whether the condition that was agreed to by the parties or the condition imposed by the one person is satisfied, and that's been hornbook law from the beginning of time. And to discuss whether the condition is adequately interpretable, that's another issue. But in this case, there's no question that the condition is understood and wasn't met because the full amount wasn't paid. It wasn't a situation they didn't know what the full amount was because they set off another amount which didn't satisfy the condition. I don't see these arguments about fairness or not. The lease was for X number of years. You could terminate early, and I don't think it could be made any clearer that you had to satisfy both the time and the amount, and neither the time or amount were in question. The amount you knew, you paid the first amount. You made a decision to offset an account, but your assumption was that the condition could be satisfied within the county, not the payment of the termination fee. And we would be upsetting years and years of contract law and be putting in doubt all the contracts, commercial paper that's out there these days that have conditions in them. I don't know quite how you want us to interpret it and say it's fair. Well, a few points. So just to clarify, I think Your Honor is transitioning to the substance of the interpretation of the early termination provision, which I do think could be clear, and I think that Judge Harris acknowledged that. Why do you say that? You guys complied fully. How can you say it could be any clearer? You gave it to the penny on the first payment, and you gave it to the penny on the second payment and then set off something that wasn't rent. And so the question was you didn't pay the termination fee, which was defined to be rent plus this. Well, actually, so looking at the record, I don't know that there's any – there was no response or discussion among the parties after the first payment that simply said that's good, just make it again. Fair enough. And actually, you haven't presented it even below that there was a difficulty in computing it. There was no defense saying we didn't know the amount. Okay. The defense was that we were entitled to set off the janitor's fees. That was the defense. But you set off the janitor's fees, and that's not included in this condition. I don't know why we're making a lot of hay about the possibilities that are not existing in this case. Well, I think Your Honor is actually – the situation that we're discussing now, in this situation, Your Honor is assuming that this is, in fact, a condition, and that's the disputed question. Well, I can't think of anything more clear as a condition. I don't know what you think conditions are. Well, I think that that's sort of – You guys assumed it was a condition because you tried to satisfy it. At least you thought you were trying to satisfy it. But you took the liberty of subtracting janitorial fees, which is more like an accounting rather than satisfying the condition. Well, and certainly we – yes, the NCO did attempt to satisfy the conditions it understood to be present in the early termination fee, which I think we would all agree are payment or provision of a notice, which was done, and payment of a fee in two installments. But the exact accounting of that fee and the payment of that fee in the correct amount on the very first try do not appear to be conditions. Why didn't you just pay the second fee like the first fee? Well, I think there's actually a reasonable understanding or very justifiable reason for that. I think what NCO actually did was pay rent as it had been doing so for the vast majority of the lease agreement. And as the record shows or the lease shows that this janitorial allowance was an offset against rent when the janitorial services were provided by the tenant, your NCO. It didn't say that in there at all. It said rent – it defined rent as the janitorial services for the common areas. Correct. But it had all – it defined – Well, you raised that before the district court. The district court rejected it, and now – and you did not present that. No, but I think that your question, Your Honor, was why did this happen? What was the reason for the mistake? Well, I tried to answer it, but it didn't satisfy the condition. Somebody took a risk. They wanted – they thought, okay, we're terminating. We're going to do a full accounting, and we're going to get the upper hand because we'll have the money, holding the money. Right. But the problem with that is you should have satisfied the condition and then done your accounting later on other matters that were open on the lease, whether it's lawn mowing or whatever it is. Again, I think Your Honor is assuming that this was a condition, and that's the issue that we're challenging. That's the – Your question is whether this provision imposed conditions? No, no. 8.05? Clearly. Clearly this provision imposes conditions, and the question that the district court asked and that this court will have to ask itself – this is de novo review, and it can do this – is what are those conditions and what are the covenants? And we would submit that Beckenheimer's is the controlling case in this instance, and it sets a very high bar for establishing that an event is a condition. It does so because conditions are inherently unfair. They are disfavored ways of structuring contracts, even among sophisticated parties. And if the reading of – or NCO's reading of this provision has any level of reasonableness, and I think it does, I mean, as to whether or not this is in fact a condition. To be clear, so what the district court is – you're adopting the district court's analysis, which is, yes, it's a condition to give notice. It's a condition that you make these two payments on these two days. What is not a condition, what is a covenant, is that they be in the right amount. Correct on the first try, yes. Let me ask you sort of the reverse of the question I asked before. What if you guys had sent in $10? Well, I think certainly – so if you look at Beckenheimer's, this discusses case law back to the 1800s justice story, which speaks of gross negligence. I think that in that case, where it is clearly contemplated that 10 months of rent would be somewhere in excess of $1 million or close to $1.5 million, which I think it is, you would fall into the realm of gross negligence and would be sort of out of luck. Okay, but you don't think what happened here, where it wasn't a mistake in trying to figure out exactly how much you would owe for your share of rent or taxes, but you just decided, I think we'll deduct this whole other thing. We'll do an accounting instead of trying to figure out our rent. That was sort of an objectively reasonable mistake as compared to this kind of gross. Yes, and there is certainly no – I mean, there is no evidence in this summary judgment record of, you know, questioning the good faith. Well, not good faith, but it was sort of gross. Gross negligence or, I mean, sort of in that to the extent that good faith, bad faith, gross negligence all sort of addressed it. Well, if it is something like good faith, bad faith, then isn't there a fact question that the district court had to decide? No, because Beckenheimer's ends the inquiry as a matter of law. It's not subjective. It's not, right. So it is – there is no evidence that this was done with for any other reason other than an accounting error. And the – so I think that, you know, the fact – we also say that, you know, termination fee is a defined term. Yes, my colleague pointed that out. It is a complex term to figure out even sort of based on the provisions of this lease. It requires a sophisticated understanding of the various provisions of how rent is calculated. It's also important to know that rent and these fees – How rent is calculated is not an issue. The question is how – what is the rent? Well – Didn't you pay it monthly? Yes, it was paid – Monthly? That's correct, but it's – So what is the difficulty of the calculation that has to do with that? I mean, it may have been rocket science required to calculate it, but however it is, when it Right. And then the rest is the factor of 10. Yes. So I'm going to put – let's sort of put this under the umbrella of Beckenheimer's, which answers the question here. I mean, you think that these – the fact that it is a very complex calculation suggests – Why is it complex? Ten times the monthly rent? No, no. It's – well, it's ten times the monthly rent with additional expenses. These fees are adjustable. We're paying this fee ten months, estimating fees that are due sort of ten months from the time the first payment is – or what rent would be ten months from the time the first payment is made. But that was not an issue in this case. That was not a difficulty. And to say that was a difficulty that excuses the exercise of the condition is disingenuous. Well, again, Your Honor is assuming that this is a condition, and what we would say is that because it is a complex calculation, that highlights the lack of clarity or the agreement. It is – it puts it squarely in the context of Beckenheimer's. It says it does not have the degree – the very high degree of clarity that Beckenheimer's requires to make it a condition. But the facts of this case take you out of the reasoning of those cases because you did get it absolutely correct. You gave exactly 50 percent of what was required to the penny. Well, I think – I think we gave – That's the first thing. I think that the – But what you did is you incorporated – I can understand. You took a risk. You said, listen, you owe us some money on the janitorial allowance, and I'm going to – it's called self-help. I'm going to deduct it from it. But that's a risk, isn't it? It wasn't a risk. It was an accounting error. I think it was simply the calculation of rent as – Accounting. A calculation of rent as it had been paid as opposed to how rent would be paid. This is a – the janitorial allowance was a credit for services that were being provided by the tenant. It was not to be taken against the term – the termination fee, which was for a period of Did you think that if you paid the whole fee, you wouldn't be able to go back and be recouped, reimbursed for the janitorial allowance? Did you think that? I don't know that that thought ever crossed the – I don't know that that question was ever raised by the – or considered by NCO. I mean, I don't think – I just don't understand. Yeah. You know, but it's an old saying that the law can't do for you what you won't do for yourself. I mean, so you had an opportunity to give them ten times the rent. And the facts of this case clearly show you knew what that figure was. Well, I think – You made a decision not to do that. Instead, you pulled in an accounting device and procedure, but you do so at your own peril if you – as long as this is a condition, don't you? If it is a condition. And it says it's of the essence because it goes back and says this is required. Well, I think we lay out in our brief how these – under Maryland law, this early termination provision is comprised of three sentences, and these three sentences need to be read together. It gets progressively less clear that the actual calculation of the fee is a condition as you move through these three sentences. And my point about difficulty in calculating isn't to say that it couldn't be done, but it highlights that it – you know, it's not clear that it was required to be done on the very first try. And one very brief point, you know, that there was some agreement or acknowledgement that we had paid the first amount in the right amount. I don't know that there was any acknowledgement there at all. It was just silence. It was an acceptance from the landlord. There wasn't a conversation about it. He has to make the same payment and we'll be good. I'm getting very close to my – very close to my time, but I do want to make a point on the cross-appeal issues. There are four errors of law here. But don't you come back up? Pardon? Okay. I showed that you would have an opportunity to come back, but go ahead. Oh, yeah. But as long as I'll be able to address these issues on – You have to do your opening argument, don't you? Well, that's my point. If I – Your Honor, if I may – Sure, go ahead. We asked you a question. Go ahead. Okay. Very briefly, four issues of law regarding the statute of limitations, parole evidence, and de minimis damages is a reason not to find a breach of contract. On each of these four issues, the district court erred. At least with respect for the first issue with regard to the statute of limitations under Maryland law, at least with respect to the three years of rent paid immediately prior to the termination of the lease, those claims were not barred by the statute of limitations under McBride, which has been interpreted by Litts. Those are Court of Appeals of Maryland cases. The parole evidence rule. Here, there's a question as to the interpretation of two terms, usable and approximately. With regard to usable, we would submit that the district court erred by failing to consider whether that term was ambiguous in the context of the parties at the time they entered into that lease. It was – There was testimony received – The district court received testimony from both the parties' representatives and the architect who was responsible for taking measurements that the Building Owners and Management Association standards applied to the term or what were in effect at the time. As to the measurement of the usable square footage of this lease, which was ultimately figured into the calculation of the rent to be paid, which was based on rentable square footage. Can I ask you a question about the usable square feet? Sure. I wasn't – and sometimes the law on this is a little unclear, too. I wasn't sure. Is your argument that – look, it's a term of art. Figuring out what something means as a term of art is not a violation of the parole evidence rule. You're supposed to look to see, sort of in your first cut, interpreting just the language of the statute – I'm sorry, of the contract. You ask whether this is a term of art with a definite meaning. So is your argument that this is a term of art, that the BOMA standard is incorporated as a term of art? Or is your argument it's not a term of art, it's actually ambiguous, so we should look at parole evidence, and it turns out they meant to incorporate the BOMA standard? Well, I don't think – so I think that the initial inquiry is, you know, whether it's a term of art or whether it's ambiguous sort of leads to the same place, that we argued, yes, that it is a term of art, and that in the context of the parties at the time they entered into that lease, there's testimony that bears – there's evidence that bears that out. It is, therefore, ambiguous because you could give it that specialized meaning, or, as the district court did, the standard definition or the dictionary definition of usable. Okay. I get the sense I'm not – So you're saying it's ambiguous because it's not clear whether they meant it as a term of art? No, I think that – so if you – in the context of the parole evidence rule, you know, if it's susceptible to more than one meaning, I think, yes, you could give it your everyday meaning of usable, or it could be read as a term of art under the BOMA standard. The court concluded it was referring to the area that was used, occupied, or possessed by you. Correct. Seems pretty normal. Seems pretty normal. And they concluded that the amount was 106,000 square feet. Rentable square feet. Yeah. Okay. The district court made the inverse error with respect to the term approximately. No challenge to the interpretation or the meaning of that term by either party. It received evidence from NCO's expert who had written an article explaining that rentable approximately could mean a variance of as great as 10%. We'd submit that that was consideration of that evidence was improper under the parole evidence rule. And finally, with regard to de minimis damages, Maryland law is clear that parties are entitled to damages for a breach of contract, no matter how large or small the breach may be. And in this case, that constituted the amount that they had been overcharged by Montgomery Park as rent for the last three years of the lease agreement. Thank you, Joseph. Mr. Culver. May it please the court, I think what counsel has ignored is the procedural context in which this decision was made. This was a non-jury case in which the court heard evidence, parole evidence as to what the BOMA, for example, how it interpreted usable. The court allowed evidence as to the word approximately, which I point out was never objected to by counsel who now complains about it. But the fact is that at the end of the plaintiff's case, the district court did as it was entitled to do, make findings based upon the evidence that had been established before. And what the district court found was that even though there was evidence in the case that BOMA might have utilized one definition for usable per their expert, Tracy, and per the questions of Mr. Notari, who was the person who did the calculation in the first place, the fact is that the judge used the common accepted normal way that the word usable means. And as Judge Niemeyer just indicated, it means to use, occupy, and possess. And each of the areas that was complained about in this case was used, occupied, and possessed by NCO. Can I ask you a question? I guess, I mean, if I walk into a realtor and say, you know, I need office space, I need a hundred, whatever it might be, a thousand feet of office space, and they say, great, I've got a thousand usable feet of office space. I've got a thousand usable feet for you. Might I not, might it not be ambiguous whether I, whether that meant, you know, office space versus bathrooms? No, not at all. Because what was, there was a space that was turned over, there was an acceptance agreement that was signed per the lease by NCO at the time it took possession. And it signed an acceptance agreement, which was an exhibit at the trial, in which it acknowledged that what it received was what it was supposed to receive under the lease. Okay, so that's different from the argument about whether, isn't that different than whether just usable space would be ambiguous on its face? It seems to me now you're making a different argument. Maybe it's ambiguous, but given the context, it's clear what it's meant. As far as the evidence in this case, there was no ambiguity as to what it received. It received a space with offices, with private restrooms, which it used, with a mezzanine, which housed its equipment, which was usable under even a BOMA standards. There was no testimony to the contrary. Everything it received, it used, and they signed an acceptance agreement. So there was no ambiguity as to what it received, what it used, and whether that complied with the figures of the lease. So you're saying even if on the assumption that I think just the term usable space by itself might be ambiguous, you're telling me in this case, even if in the abstract there might be an ambiguity, in this case there wasn't. There couldn't have been because they signed an agreement saying we got what we expected to get, and that's the acceptance agreement, and the lease required it. They signed it. That was the end of the discussion, and all of the space, which they are now complaining about, even the bridge, they used. They used the bridge for smoking, and as Judge Russell points out, he specifically noted on page, on appendix 1154, the court noted that they signed an acceptance agreement accepting the premises as built out. The private bathrooms were on the plans that were approved and built out, as he pointed out. The mezzanine was on the built-out plans and was, in fact, built out. The valve room was built out. They had the exclusive use of all of these spaces. There were even punch list items for the bridge that they had and they used. So what Judge Russell did was take the common, ordinary meaning of the word usable. He applied it. Did they have the opportunity to use it? Yes. Did they accept it? Yes. That was really the end of the discussion. But weren't there some documents that indicated that the bridge area was not included in their contract agreement? And that gets really to the word approximately. And the fact is the bridge area was 500 feet out of 106,000 feet. You said 500? 500 out of approximately 106,000. And even Mr. Gindin, who was the president of NCO who negotiated the lease, has admitted that he would consider 500 to 1,000 square feet as de minimis. And that would not have affected his intent. Of course, our standard is these facts were found that they did have exclusive use of the bridge. And the question is whether there's any evidence to support it because it's a factual finding. Yes. I mean, and Judge Russell had that ability at the end of the case under the rules for a non-jury case. And the fact is it was frankly uncontradicted that they used it. There was no question but that it was private bathrooms which they had the exclusive use and used it. But I thought he said on summary judgment it was not part of the premises, the bridge. I mean, the fact that they used it, like I assume they used the parking lot too. The bridge really becomes irrelevant. Because it's 500 feet. Right. You don't want to rest on it. It's within the approximate. Right. You're resting on approximate. Yes. And you think that much is unambiguous. So it's really not the bridge. And they recognized that too. That's why they tried to get their expert to come up with more feet because they knew 500 feet. As soon as Mr. Gindin said that 500 to 1,000 feet, that was de minimis and he wouldn't have cared, they figured they had to come up with more feet. So they came up with the private bathrooms. They came up with a lobby which was in the build-out plans. They came up with a little valve box. And we showed, frankly, that that was all, frankly, used and usable. And they did, in fact, use it. And the judge found as a fact that they did use it. So the fact of the matter is that they got what they intended to get. And Judge Russell, as I say, pointed out that they signed an acceptance agreement and received the private bathrooms, used the private bathrooms, had the mezzanine for the equipment that only served the NCO premises. And if I just point out in this memorandum at 1274, 1275, Judge Russell clearly states that given that the rental square footage was defined as approximate, combined with the expert testimony as to what that means, they got what they called the benefit of the bargain. Just a quick question. Do you need that 10% expert testimony to prevail? Do you need this court to say that approximate means 10%? No. Okay. Because Mr. Gindin testified that 500 to 1,000 feet were de minimis, and that takes care of the bridge business. Thank you. Thank you. Dr. Just a few very brief points. With respect to this acceptance agreement, I think that that really, the question of the acceptance agreement was signed by NCO, really goes to the statute of limitations question. It was signed well before NCO. They don't need the statute of limitations. They won on the substance. In other words, the court found that the usable space was about 106,000 feet and made findings of fact and heard the evidence and found the people credible, not credible, and reached these conclusions. The case doesn't depend on a statute of limitations. That was another straw in its. I think sort of working, I mean, obviously we need the statute of limitations because we're contesting, and that was an alternative basis. I know it was an alternative basis, but you have to win on the substance before you get to the statute of limitations. So we can discuss the substance. I think that the question, the discussion that Your Honors were having with my colleague related to the approximately and the bridge. I don't think the bridge is at issue anymore in the context of this appeal. The point really is that we don't know because the district court's errors in ruling on the parole evidence with respect to usable and with respect to approximately, we really don't know whether the court would find, the court didn't accept or consider the meaning of the term usable in the term of art context that we suggest applied and doesn't know sort of have a record of what the measurement would be if usable was defined under BOMA as we contend it was supposed to be. It's just not there. And once those calculations are made, then we can determine whether or not it was, NCO received approximately the square footage that it negotiated for. And that finding is also not in the record. And what's your best argument that if we use the standard you suggest, what reduction it would be in terms of what's available in usable space? What amount is that? How many square footage? Well, so we actually, we lay it out in our brief. What is it? What is it? You mean the actual calculation? Yeah. I actually don't, so I don't know the specific number off the top of my head, but it's somewhere, I think, if you considered Mr. Tracy's testimony, would be somewhere approximately 4,000 rentable square feet less than. Less, 4,000. 4,000. Out of 100 and what? 106,000. And I'll put this in context for you, Your Honor. If you took that and reduced the rent. Does that include bathrooms? I think under. In the mezzanine? I think that. I actually apologize, but I'm struggling to recall the areas that were specifically excluded by Mr. Tracy. That's important, isn't it? It is important. One of the main issues. Yes. The two things, the primary issues I do recall were the bathrooms were excluded and the elevator lobby where Mr. Tracy testified were incorrectly taken into account. To get to your 4,000. Right. If you took those out, if you took the elevator. I assume you used both of those spaces. Yes, it would be a reduction of approximately 4,000. No, you used them, didn't you? In your operation. You used those. Of course, but I think the question is that usable under the technical meaning, under BOMA, would exclude them from the measurement of usable square feet. Bathrooms, internal bathrooms? Yes, that was the testimony, Your Honor, from Mr. Tracy. Inside your space? Yes. What about a kitchenette? I hesitate to speculate as to other areas that would be. And the mezzanine, you used that, didn't you? As we point out in our brief, the mezzanine, I don't think we're contesting that at this point. I will also. So you have to adjust his numbers then to reduce, take those out because they were included in his numbers. Well, not if you credited his testimony, and the district court did. The very last point, to put a very specific figure on this, if you reduced the rent by 4,000 square feet over the three years that we contend we'd be entitled to the overcharge payment for, times the initial rent, which was $15 per rentable square feet at the beginning of the lease, talking about a substantial sum of money in the tune, excess of $2 million overcharge to NCO. Thank you. Thank you so much.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris